**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Noel Alcarez-Guerrero, | CV10-00750-TUC-JGZ(JR) |
|       Petitioner, | |
| | **REPORT AND** |
| vs. | **RECOMMENDATION** |
| Charles L. Ryan, et al., | |
|       Respondents. | |

Pending before the Court is Noel Alcarez-Guerrero's Petition for Writ of Habeas Corpus (Doc. 1) filed pursuant to 28 U.S.C. § 2254.  In accordance with the Rules of Practice of the United States District Court for the District of Arizona and 28 U.S.C. § 636(b)(1), this matter was referred to the Magistrate Judge for report and recommendation.  As explained below, the Magistrate Judge recommends that the District Court, after an independent review of the record, dismiss the Petition with prejudice.

1

## I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Following a jury trial, Alcarez-Guerrero was convicted of first-degree murder, a class one felony; kidnapping, a class two felony; aggravated assault resulting in a bone fracture, a class four felony; aggravated assault with a deadly weapon or dangerous instrument, a class three felony; and aggravated assault while the victim was restrained, a class six felony. *Answer*, Ex. R, pp. 1-2. The trial court sentenced Alcarez-Guerrero to natural life for the murder conviction, to be served concurrently with a six-year term for aggravated assault resulting in a fracture and a 7.5 year sentence for aggravated assault with a deadly weapon. The court also imposed sentences of five years for kidnapping and one year for aggravated assault while the victim was restrained, which were to be served concurrently but consecutive to the other sentences. *Id.*, p. 2.

The Arizona Court of Appeals summarized the factual background as follows:

In February 2005, the body of Sammy J. was found in a self-storage facility. Video surveillance footage provided Sierra Vista police with information that led them to Alcarez-Guerrero and others involved in the murder.

When Tucson police officers attempted to arrest Alcarez-Guerrero at the request of the Sierra Vista police department, he fled in a vehicle. Tucson police followed Alcarez-Guerrero through residential neighborhoods, city streets, and undeveloped desert areas until a police helicopter was able to track him from the air. Once the helicopter established visual contact with Alcarez-Guerrero's truck, the ground pursuit dropped back. The chase ended when Alcarez-Guerrero ran a red light and struck a vehicle and then a wall. He fled on foot into a residential yard and was arrested at that location.

After his arrest, Alcarez-Guerrero admitted to police detectives his brother had warned him he was wanted for Sammy's murder.

2

Alcarez-Guerrero also told them he was angry with Sammy, had taken Sammy to the residence where the other defendants were, and had slapped Sammy repeatedly but denied killing him.   During the interview Alcarez-Guerrero spontaneously denied choking or kicking Sammy, before the manner of his death had been made public. Alcarez-Guerrero also told officers the events surrounding Sammy's death had been "already planned" when he took Sammy to the residence.

*Answer*, Ex. R, pp. 2-3.

Alcarez-Guerrero appealed his conviction, claiming that the trial court erred by admitting evidence about his flight from police in an attempt to avoid arrest, by denying his motion for a judgment of acquittal based on Rule 20, Ariz.R.Crim.P., by giving a jury instruction on felony murder, by sentencing him to natural life for the murder without a jury finding.  He also claimed that the evidence was insufficient to support his conviction for felony murder.  *Id*., Ex. R., p. 2.  On August 16, 2007, the Court of Appeals affirmed Alcarez-Guerrero's conviction in an unpublished memorandum decision.  *Id.*, Ex. R.  Alcarez-Guerrero then petitioned the Arizona Supreme Court for review.  *Id*., Ex. S.  The Supreme Court denied the petition on March 18, 2008.  *Id*., Ex. T.

On June 2, 2008, Alcarez-Guerrero filed a motion for post-conviction relief ("PCR") with the Cochise County Superior Court pursuant to Rule 32.9, Ariz.R.Crim.P.  *Id*., Ex. U.  He argued that his trial counsel provided ineffective assistance by failing to move for a change of venue for the trial, by failing to object to the traffic chase evidence, and by failing to present mitigation evidence at

3

1    sentencing.  *Id.*, Ex. U, pp. 12-24.  By decision filed October 30, 2008, the trial court

2    denied each of Alcarez-Guerrero's claims on the merits.  *Id.*, Ex. X.

3         On January 20, 2009, Alcarez-Guerrero filed a petition for review in the

4    Arizona Court of Appeals raising two claims of ineffective assistance of counsel:  (1)

5    that his counsel was for not moving for a change of venue; and (2) that his counsel

6    was ineffective for failing to present mitigation evidence at sentencing.  *Id.*, Ex. Y.

7    In a Memorandum Decision filed on June 15, 2009, the Court of Appeals granted

8    review but denied relief.  *Id.*, Ex. AA.  Alcarez-Guerrero then petitioned the Supreme

9    Court for review.  *Id.*, Ex. BB.  By letter dated December 15, 2009, review was

10   denied.  *Id.*, Ex. CC.

11        In the petition now before the Court, Alcarez-Guerrero raises five claims.  In

12   Claim 1, he alleges that the trial court's imposition of a sentence of natural life

13   violated his rights to due process.  In Claim 2, he asserts that his due process rights

14   were violated because there was insufficient evidence to support his conviction.  In

15   his last claim, Alcarez-Guerrero alleges several instances of ineffective assistance of

16   counsel, including counsel's failure to seek a change of venue (Claim 3), counsel's

17   failure to object to testimony regarding the high-speed chase preceding his arrest

18   (Claim 4), and counselor's failure to present mitigation evidence at sentencing

19   (Claim 5).  *Petition*, pp. 16-52.

20

21

22

4

II.     **LEGAL DISCUSSION**

A.     **Timeliness**

The Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides for a one year statute of limitations to file a petition for writ of habeas corpus.   28 U.S.C. § 2244(d)(1).   Petitions filed beyond the one-year limitations period must be dismissed.  *Id.* The statute provides in pertinent part that:

> (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Under these standards, Alcarez-Guerrero had one year from December 15, 2009, which was the date on which the Arizona Supreme Court denied review of his

1    PCR petition, to file the instant petition.  As Respondents recognize, the petition was

2    timely filed on December 14, 2010.

3         **B.    Exhaustion and Procedural Default**

4         Respondents contend that two of Alcarez-Guerrero's claims, Claim 2 and

5    Claim 4, were not properly exhausted and are barred from habeas review.  A state

6    prisoner must exhaust the available state remedies before a federal court may

7    consider the merits of his habeas corpus petition.  *See* 28 U.S.C. § 2254(b)(1)(A);

8    *Nino v. Galaza,* 183 F.3d 1003, 1004 (9th Cir.1999).  "[A] petitioner fairly and fully

9    presents a claim to the state court for purposes of satisfying the exhaustion

10   requirement if he presents the claim: (1) to the proper forum, (2) through the proper

11   vehicle, and (3) by providing the proper factual and legal basis for the claim."

12   *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (citations omitted).

13        Exhaustion requires that a habeas petitioner present the substance of his

14   claims to the state courts in order to give them a "fair opportunity to act" upon these

15   claims.  *See O'Sullivan v. Boerckel,* 526 U.S. 838, 844 (1999).  "To exhaust one's

16   state court remedies in Arizona, a petitioner must first raise the claim in a direct

17   appeal or collaterally attack his conviction in a petition for post-conviction relief

18   pursuant to Rule 32," *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994), and then

19   present his claims to the Arizona Court of Appeals.  *See Swoopes v. Sublett,* 196 F.3d

20   1008, 1010 (9th Cir. 1999).

21        Additionally, a state prisoner must not only present the claims to the proper

22   court, but must also present them fairly.  A claim has been "fairly presented" if the

1   petitioner has described the operative facts and federal legal theories on which the

2   claim is based.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1971); *Rice v. Wood*, 44

3   F.3d 1396, 1403 (9th Cir. 1995).  "Our rule is that a state prisoner has not 'fairly

4   presented' (and thus exhausted) his federal claims in state court unless he specifically

5   indicated to that court that those claims were based on federal law."  *Lyons v.*

6   *Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), amended on other grounds, 247 F.3d

7   904 (9th Cir. 2001).  A petitioner must alert the state court to the specific federal

8   constitutional guaranty upon which his claims are based, *Tamalini v. Stewart*, 249

9   F.3d 895, 898 (9th Cir. 2001), however, general appeals in state court to broad

10  constitutional principles, such as due process, equal protection, and the right to a fair

11  trial, are insufficient to establish fair presentation of a federal constitutional claim.

12  *Lyons*, 232 F.3d at 669.  Moreover, it is not enough that a petitioner presented to the

13  state court all the facts necessary to support an inadequately identified federal claim

14  or that a "somewhat similar" state law claim was raised.  *Baldwin v. Reese*, 541 U.S.

15  27, 28 (2004); *Shumway v. Payne*, 223 F.3d 982, 988 (9th Cir. 2000) (mere similarity

16  between a claim of state and federal error insufficient to establish exhaustion).

17  "Exhaustion demands more than drive-by citation, detached from any articulation of

18  an underlying federal legal theory."  *Castillo v. McFadden*, 399 F.3d 993, 1003 (9th

19  Cir. 2005).

20       Claims may be procedurally defaulted and barred from federal habeas review

21  in a variety of circumstances.  If a state court expressly applied an adequate and

22  independent state procedural bar when the petitioner attempted to raise the claim in

1   state court review of the merits of the claim by a federal habeas court is barred.  *See*

2   *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991).  Arizona courts have been consistent

3   in the application of the state's procedural default rules.  *Stewart v. Smith*, 536 U.S.

4   856, 860 (2002) (holding that Ariz.R.Cirm.P. 32.2(a) is an adequate and independent

5   procedural bar).  In Arizona, claims not previously presented to the state courts on

6   either direct appeal or collateral review are generally barred from federal review

7   because any attempt to return to state court to present them would be futile unless the

8   claims fit into a narrow range of exceptions.  *See Ariz.R.Crim.P.* 32.1(d)-(h), 32.2(a)

9   (precluding claims not raised on direct appeal or in prior post-conviction relief

10  petitions), 32.4(a) (time bar), 32.9(c) (petition for review must be filed within thirty

11  days of trial court's decision).  Because these rules have been found to be

12  consistently and regularly followed, and because they are independent of federal law,

13  either their specific application to a claim by an Arizona court, or their operation to

14  preclude a return to state court to exhaust a claim, will procedurally bar subsequent

15  review of the merits of such a claim by a federal habeas court.  *Stewart*, 536 U.S. at

16  860; *Ortiz v. Stewart*, 149 F.3d 923, 931-32 (9th Cir. 1998) (Rule 32, Ariz.R.Crim.P.

17  is strictly followed); *State v. Mata*, 916 P.2d 1035, 1050-52 (Ariz. 1996) (waiver and

18  preclusion rules strictly applied in postconviction proceedings).

19        A federal court may not consider the merits of a procedurally defaulted claim

20  unless the petitioner can demonstrate cause for his noncompliance and actual

21  prejudice, or establish that a miscarriage of justice would result from the lack of

22  review.  *See Schlup v. Delo*, 513 U.S. 298, 321 (1995).  To establish cause, a

petitioner must point to some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Dretke v. Haley*, 541 U.S. 386, 393-94 (2004). "[C]ause is an external impediment such as government interference or reasonable unavailability of a claims factual basis." *Robinson v. Ignacio*, 360 F.3d 1044, 1052 (9th Cir. 2004) (citations omitted). Ignorance of the state's procedural rules or lack of legal training do not constitute legally cognizable "cause" for a petitioner's failure to fairly present a claim. *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 908-10 (9th Cir. 1986); *Schneider v. McDaniel*, 674 F.3d 1144, 1153 (9th Cir. 2012). "Prejudice" is actual harm resulting from the constitutional violation or error. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984); *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1996).

Alternatively, a federal court may review the merits of a procedurally defaulted claim where a petitioner can establish that a "fundamental miscarriage of justice" would otherwise result. *Schlup v. Delo*, 513 U.S. at 327. A fundamental miscarriage of justice exists when a constitutional violation resulted in the conviction of one who is actually innocent. *Id*.

## 1. Analysis of Claims

### a. Claim 2

According to Alcarez-Guerrero, he was deprived of his due process rights because the State's evidence was insufficient to support his conviction for first degree murder. *Petition*, p. 22. Respondents assert that the claim was not raised as a

1    federal claim. Alcarez-Guerrero contends that this claim was appropriately raised in

2    his direct appeal brief, but that the Court of Appeals ignored the issue.

3          In his Opening Brief on direct appeal, Alcarez-Guerrero made no reference or

4    mention to any federal authority in support of his insufficiency argument. *Answer*,

5    Ex. O, pp. 24-25. The only law he cited was three Arizona state cases related to the

6    standard of proof and standard of review. *Id.* However, citation to a state case can in

7    some cases constitute fair presentment if the case explicitly analyzes the same federal

8    constitutional claim raised by the petitioner. *Peterson v. Lampert*, 319 F.3d 1153,

9    1158 (9th Cir. 2003) (en banc); *cf. Fields v. Waddington*, 401 F.3d 1018, 1022 (9th

10   Cir. 2005) (mere citation to a state case that conducts analysis under state and federal

11   law does not necessarily satisfy exhaustion requirements).

12         As Respondents contend, two of the three Arizona cases do not even arguably

13   touch upon the sufficiency of the evidence claim that Alcarez-Guerrero raises here.

14   *See State v. Arredondo*, 155 Ariz. 314 (1987); *State v. Whalen*, 192 Ariz. 103 (App.

15   1997). However, the third, *State v. Atwood*, 171 Ariz. 576 (1992), does raise a

16   sufficiency of the evidence claim and the decision discusses both the state a federal

17   standards for such a claim. The federal case cited in *Atwood* is *Jackson v. Virginia*,

18   443 U.S. 307 (1979), which in turn identifies the standard for evaluating a sufficiency

19   claim as whether "any rational trier of fact could have found the essential elements of

20   the crime beyond a reasonable doubt." *Id*. at 319. This standard is the same as that

21   applied under Arizona authority. *See, e.g., State v. Mincey*, 141 Ariz. 425, 432

22   (1984) (citing *Jackson* for standard for evaluating sufficiency of the evidence

1    claims).   Given that the Alcarez-Guerrero cited an Arizona case that analyzed an

2    identical claim, he sufficiently exhausted this claim and it will be addressed on the

3    merits.

### b.    Claim 4

5            Here, Alcarez-Guerrero contends his trial counsel was ineffective for failing to

6    object or seeking to limit irrelevant and inflammatory testimony related to the high-

7    speed chase that occurred prior to Alcarez-Guerrero being placed in custody by the

8    Tucson police.  *Petition*, pp. 39-42.  As Alcarez-Guerrero contends, this claim was

9    raised before the trial court in his PCR petition.  *Answer,* Ex. U, pp. 17-19.  However,

10   as Respondents note, the claim was not raised in Alcarez-Guerrero's petition for

11   review of the trial court's denial of his PCR petition.  *Id*., Ex. O.  In fact, Alcarez-

12   Guerrero expressly noted in the petition for review that he had raised the claim before

13   the trial court, but was not pursuing it before the Court of Appeals.  *Id*., Ex. Y, p. 12

14   n. 18 ("The Defendant does not ask this Court to review the trial court's

15   determinations regarding the chase evidence.").  Because the claim was not presented

16   to the Arizona Court of Appeals, it was not exhausted.  *Baldwin v. Reese*, 541 U.S.

17   27, 29 (2004) (claim must be presented in each appropriate state court).

### 2.    Cause and Prejudice

19           Respondents contend and Alcarez-Guerrero does not contradict, that Alcarez-

20   Guerrero is procedurally barred from now raising Claim 4 in State court.  *See*

21   Ariz.R.Crim.P. 32.2(a)(3) ("A defendant shall be precluded from relief under [Rule

22   32] based upon any ground . . . [t]hat has been waived at trial, on appeal, or in any

1   previous collateral proceeding.")  *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).

2   As such, the merits of the claims need not be addressed unless Alcarez-Guerrero

3   establishes cause and prejudice or that a fundamental miscarriage of justice has

4   occurred.  Alcarez-Guerrero does not argue that cause and prejudice exist in this case

5   and, therefore, Claim 4 is not subject to review.

6       **C.   Merits**

7         Under the AEDPA, a federal court "shall not" grant habeas relief with respect

8   to "any claim that was adjudicated on the merits in State court proceedings" unless

9   the state decision was (1) contrary to, or an unreasonable application of, clearly

10   established federal law as determined by the United States Supreme Court; or (2)

11   based on an unreasonable determination of the facts in light of the evidence presented

12   in the State court proceeding.  28 U.S.C. § 2254(d).  *See Williams v. Taylor*, 120

13   S.Ct. 1495 (2000).  A state court's decision can be "contrary to" federal law either (1)

14   if it fails to apply the correct controlling authority, or (2) if it applies the controlling

15   authority to a case involving facts "materially indistinguishable" from those in a

16   controlling case, but nonetheless reaches a different result.  *Van Tran v. Lindsey*, 212

17   F.3d 1143, 1150 (9th Cir. 2000).  In determining whether a state court decision is

18   contrary to federal law, the court must examine the last reasoned decision of a state

19   court and the basis of the state court's judgment.  *Packer v. Hill*, 277 F.3d 1092, 1101

20   (9th Cir. 2002).  A state court's decision can be an unreasonable application of federal

21   law either (1) if it correctly identifies the governing legal principle but applies it to a

22   new set of facts in a way that is objectively unreasonable, or (2) if it extends or fails

1   to extend a clearly established legal principle to a new context in a way that is

2   objectively unreasonable.  *Hernandez v. Small*, 282 F.3d 1132 (9th Cir. 2002).

3                **1.      The AEDPA is not unconstitutional.**

4         As a prelude to his numbered claims, Alcarez-Guerrero asserts that the

5   AEDPA is unconstitutional because it suspends the writ of habeas corpus and

6   violates the separation of powers doctrine.  However, in *Duhaime v. Ducharme*, 200

7   F.3d 597 (9th Cir. 2000), the Ninth Circuit found that the AEDPA amendments to 28

8   U.S.C. 2254 did not violate the Constitution.    *Duhaime*, 200 F.3d at 579.

9   Additionally, in *Crater v. Galaza*, 491 F.3d 1119, 1124-30 (9th Cir. 2007), the Ninth

10  Circuit found that the operative provisions of the AEDPA do not violate the

11  Suspension Clause.    Therefore, Alcarez-Guerrero's claim that the AEDPA is

12  unconstitutional is unavailing.

13                **2.      Claim 1**

14        In Claim 1, Alcarez-Guerrero argues that the natural life sentenced imposed

15  by the trial court was inconsistent with the United States Supreme Court decision in

16  *Cunningham v. California*, 549 U.S. 270 (2007), and violated his due process rights.

17  *Petition*, pp. 16-18.   In its Memorandum Decision denying this claim on direct

18  appeal, the Arizona Court of Appeals explained the claim and its reasoning in support

19  of its denial:

20             Alcarez-Guerrero asks us to vacate his murder sentence because
          a judge rather than a jury sentenced him to natural life without parole

21        (natural life) instead of life with the possibility of parole after twenty-
          five years (life). Because the United States Supreme Court has held that

22        an aggravating factor that would subject a defendant to a sentence in

                                   13

excess of the statutory maximum must be established by a jury beyond a reasonable doubt, *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63 (2000), Alcarez-Guerrero contends his sentence is unconstitutional. Were natural life an aggravated sentence, he might have a colorable *Apprendi* claim. However, the Arizona Supreme Court has explicitly rejected such a characterization of Arizona's sentencing scheme in *State v. Fell*, 210 Ariz. 554, ¶ 19, 115 P.3d 594, 600 (2005).

Alcarez-Guerrero argues that *Fell* is contrary to the Sixth and Fourteenth Amendment rights to jury trial and procedural standard of proof beyond a reasonable doubt, as recently interpreted by the United States Supreme Court in *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856 (2007). But we have no authority to overrule our state supreme court, and it is that court to which Alcarez-Guerrero should address his arguments. *See State v. Long*, 207 Ariz. 140, ¶ 23, 83 P.3d 618, 623 (App.2004). Moreover, *Cunningham* does not explicitly or implicitly overturn the decision in Fell. The crux of Fell was that a sentence of either life or natural life is warranted by a jury finding of guilt in a first-degree murder trial and natural life is not an aggravated sentence warranting jury findings under the Sixth Amendment. *See Fell*, 210 Ariz. 554, ¶¶ 14, 19, 115 P.3d at 598-560. Unlike the California sentencing scheme in *Cunningham*, Arizona's first-degree murder statutes do not create tiers of punishment, but "provide[ ] the superior court with the discretion to sentence an offender within a range-from life to natural life-for non-capital first degree murder." *Fell*, 210 Ariz. 554, ¶ 15, 115 P.3d at 598.

Here, based on the jury's verdict, the trial court had the discretion to sentence Alcarez-Guerrero to either life or natural life, see Id. ¶ 17, without performing any additional fact-finding, see Id. ¶¶ 13-15. We fail to see the conflict between *Cunningham* and *Fell* that Alcarez-Guerrero alleges. As the state points out in its brief, " Cunningham confirms that Fell is correctly decided because it reaffirms that the Sixth Amendment is not [violated] if 'the jury's verdict alone' authorizes the sentence." *Cunningham*, 549 U.S. 270, 127 S.Ct. at 869. Here, it was solely the jury's guilty verdict that put Alcarez-Guerrero at risk of life or natural life and when the trial court sentenced him, it did not violate the Sixth Amendment.

Alcarez-Guerrero makes a number of additional arguments premised on the assumption rejected in *Fell* that natural life is an aggravated sentence under Arizona's statutory scheme. Because we

reject Alcarez-Guerrero's contention that *Fell* has been superceded [sic] by *Cunningham*, we necessarily reject those arguments as well.

*Answer*, Ex. R, pp. 9-11.

As Respondents contend, the Arizona Court of Appeals rejection of this claim was not an unreasonable application of clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). This is because, as the appeals court noted, unlike the California law at issue in *Cunningham*, Arizona's laws authorize the sentencing court to impose a sentence of life or natural life and do not oblige the trial judge to sentence a defendant to the lesser term unless it first finds aggravating factors. *See Cunningham v. California*, 549 U.S. at 275 (describing California sentencing requirements).

Alcarez-Guerrero also cites *Stokes v. Schriro*, 465 F.3d 397 (9th Cir. 2006), in support of his claim that the trial court violated *Apprendi* in imposing a sentence of natural life. However, there is no conflict between *Stokes* and Alcarez-Guerrero's sentencing. The sentence imposed in *Stokes* exceeded the statutory maximum, whereas the Alcarez-Guerrero's sentence did not. Because Alcarez-Guerrero's sentence was authorized under the jury's findings, no *Apprendi* violation occurred.

### 3.    Claim 2

Alcarez-Guerrero's Claim 2 is that he was deprived of his due process rights because the State's evidence was insufficient to support his conviction. In addressing this argument on appeal, the Arizona Court of Appeals stated:

Next, to the extent we understand his arguments, Alcarez-Guerrero contends the trial court's explanation at sentencing of its

15

decision to impose consecutive sentences for his kidnapping and murder convictions somehow rendered erroneous the denial of his motion for judgment of acquittal pursuant to Rule 20 and its instruction to the jury on first-degree, felony murder. Alcarez-Guerrero similarly claims the trial court's "finding at sentencing vitiates any felony murder verdict," maintaining without authority or explanation that the court's general statements somehow illustrate the insufficiency of the evidence supporting his conviction.

First, Alcarez-Guerrero takes liberties with the record. The trial court made no finding or suggestion at sentencing that he had not committed first-degree murder based on felony murder, but explained its reasons for imposing consecutive sentences for particular offenses rather than concurrent ones. [FN2 Alcarez-Guerrero does not argue that the imposition of the consecutive sentences was error.]  Second, both the denial of a Rule 20 motion and the giving of a particular jury instruction are decisions that we review in light of the evidence before the court at the time the decision was made. See Ariz. R.Crim. P. 20(a); *State v. Mathers*, 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990) (judgment of acquittal appropriate only when there is no substantial evidence that could support conviction); *State v.. Mincey*, 141 Ariz. 425, 432, 687 P.2d 1180, 1187 (1984) ("If reasonable [persons] could differ as to whether the evidence establishes a fact in issue, that evidence is substantial."); *State v. Cruz*, 189 Ariz. 29, 31, 938 P.2d 78, 80 (App.1996) (trial court may properly give instruction on any theory reasonably supported by evidence). Alcarez-Guerrero does not explain how statements made by the trial court at sentencing, months after the verdict was returned, require the reversal of those decisions made during trial. Nor has he has cited any authority to support that argument, and we have found none.

Although Alcarez-Guerrero also contends insufficient evidence exists to support his felony murder conviction, he only challenges the lack of special interrogatories on the verdict form. Again without any supporting authority, he claims "special interrogatories about which theory of first degree murder [the jury] applied in reaching its verdict" are required but were not requested of the jury and thus, the felony murder verdict cannot stand. We disagree because, "in Arizona, first-degree murder is only one crime whether it is premeditated murder or a felony murder." *State v. Gerlaugh*, 134 Ariz. 164, 168-69, 654 P.2d 800, 804-05 (1982). Although the defendant may demand a unanimous verdict on whether an offense has occurred, he or she is not entitled to a unanimous decision on exactly how that offense was committed. *Id.*

1    Therefore, interrogatories were not required and Alcarez-Guerrero has
2    provided no reason to overturn the jury's decision. We also note that it
     is the jury's responsibility to determine whether a death occurred "in
3    the course of and in furtherance of" a felony, not the trial court's, and it
     is therefore difficult to see how a trial court's statements at sentencing
4    could be grounds for overturning the jury's verdict. A.R.S. § 13-
     1105(A)(2).

5        Because Alcarez-Guerrero has cited no authority that supports
     his novel contentions, as required by Rule 31.13(c)(1)(vi), Ariz.
6    R.Crim. P., 17 A.R.S., we do not further address the issues he raises
     based on the trial court's statements at sentencing. See Ariz. R.Crim. P.
7    31.13(c)(1)(vi) (appellant's brief must include "an argument which
     shall contain the contentions of the appellant with respect to the issues
8    presented, and ... with citations to the authorities, statutes and parts of
     the record relied on"); *State v. Carver*, 160 Ariz. 167, 175, 771 P.2d
9    1382, 1390 (1989) ("In Arizona, opening briefs must present
     significant arguments, supported by authority, setting forth an
10   appellant's position on the issues raised.").

11   *Answer*, Ex. R, pp. 7-9.

12       Alcarez-Guerrero contends that the Arizona Court of Appeals decision was

13   contrary to the United States Supreme Court's decision in *Jackson v. Virginia*, 443

14   U.S. 307 (1979), because the trial court found that the kidnapping occurred

15   separately from the murder, thereby nullifying the possibility of a felony murder

16   conviction, and because the State did not present evidence that Alcarez-Guerrero

17   either planned or was present during the murder.

18       This argument, however, is simply a reiteration of Alcarez-Guerrero's

19   argument before the Arizona Court of Appeals.  As Respondents note, Alcarez-

20   Guerrero has not explained how the Court of Appeals' decision was contrary to, or an

21   unreasonable application of, clearly established federal law as determined by the

22   United States Supreme Court; or (2) based on an unreasonable determination of the

17

facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).

Moreover, even if Alcarez-Guerrero could establish a legal basis for his claim, the facts of the case against him are damaging.  In the Petition he lists a number of relatively minor evidentiary issues that he contends establish that no reasonable juror could have found him guilty.  *Petition*, pp. 22-25.  What he refused to recognize before the State court and continues to overlook is the ample evidence that led to his conviction and supports the Court of Appeals' rejection of his insufficiency claim. This evidence supports his conviction under either a felony murder or accomplice theory of liability, and includes the following facts summarized by the Court of Appeals:

> Alcarez-Guerrero also told them he was angry with Sammy, had taken Sammy to the residence where the other defendants were, and had slapped Sammy repeatedly but denied killing him.   During the interview Alcarez-Guerrero spontaneously denied choking or kicking Sammy, before the manner of his death had been made public. Alcarez-Guerrero also told officers the events surrounding Sammy's death had been "already planned" when he took Sammy to the residence.

*Answer*, Ex. R, p. 3.  Because Alcarez-Guerrero has not explained how this evidence is insufficient to support the verdict against him, he is not entitled to relief on this claim.

### 4.    Ineffective Assistance of Counsel

Alcarez-Guerrero raises three claims of ineffective assistance of counsel.  As discussed above, Claim 4, is unexhausted and not subject to habeas review.  The

1    operative legal standard applicable to the two remaining claims is a familiar one,

2    addressed by the United States Supreme Court in *Strickland v. Washington*, 466 U.S.

3    668 (1984). The standards enunciated there by the Court are applied unless there is

4    other Supreme Court precedent directly on point. *See Wright v. Van Patten*, 128

5    S.Ct. 743, 746 (2008). Under *Strickland*, Alcarez-Guerrero must show both deficient

6    performance and prejudice in order to establish that counsel's representation was

7    ineffective. 466 U.S. at 687. In the context of habeas claims evaluated under §

8    2254(d)(1) standards, the question "is not whether a federal court believes the state

9    court's determination was incorrect but whether that determination was

10   unreasonable– a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465,

11   473 (2007).

12                            **a.    Claim 3**

13          Alcarez-Guerrero alleges that his counsel was ineffective for failing to seek a

14   change of venue based on the publicity the murder received. To be successful on this

15   claim, Alcarez-Guerrero must demonstrate that the venue motion would have, or

16   should have, been granted. *Tyers v. Schriro*, 547 F.3d 1026, 1030 (9th Cir. 2008).

17   Pretrial publicity requires a change of venue when "the community where the trial

18   was held was saturated with prejudicial and inflammatory media publicity about the

19   crime" or "voir dire reveals that the jury pool harbors 'actual partiality or hostility

20   [against the defendant] that [cannot] be laid aside." *Hayes v. Ayers*, 632 F.3d 500,

21   508 (9th Cir. 2011) (quoting *Harris v. Pulley*, 885 F.2d 1354, 1361-63 (9th Cir. 1988).

22          In denying this claim, the Arizona Court of Appeals explained:

As he did below, Alcarez-Guerrero contends his trial counsel performed ineffectively by failing to move to change the venue of his trial based on pretrial publicity the case had received. The same judge who had presided over the trial ruled on the petition for post-conviction relief. He determined that counsel's failure to file such a motion had neither constituted deficient performance nor prejudiced the defense, noting that he would have denied a motion to change venue had one been filed.

Failure to file what would have been a futile motion does not constitute ineffective assistance of counsel. *See State v. Noleen*, 142 Ariz. 101, 106, 688 P.2d 993, 998 (1984) (failure to challenge voluntariness of defendant's statements not ineffective assistance because challenge "would have been futile"). Whether to grant or deny a motion for change of venue is within the discretion of the trial court. *State v. Davolt*, 207 Ariz. 191, ¶ 44, 84 P.3d 456, 470-71 (App.2004). A defendant is only entitled to a change of venue based on pretrial publicity if proceeding in the original venue would be "'fundamentally unfair.'" *Id.* ¶ 45, 84 P.3d 456, *quoting State v. Atwood*, 171 Ariz. 576, 630, 832 P.2d 593, 647 (1992). Prejudice from pretrial publicity may be actual or presumed, but prejudice will not be presumed absent a showing that the publicity was "so extensively pervasive and prejudicial" it created a "'carnival-like atmosphere'" in which the court could not "'give credibility to the jurors' attestations, during voir dire, that they could decide [the case] fairly.'" *Id.* ¶ 46, 832 P.2d 593, *quoting Atwood*, 171 Ariz. at 631, 832 P.2d at 648, and *State v. Nordstrom*, 200 Ariz. 229, ¶ 15, 25 P.3d 717, 727 (2001). To show actual prejudice, a defendant "must show that 'the jurors have formed preconceived notions concerning the defendant's guilt and that they cannot leave those notions aside.' " *Id.* ¶ 49, 25 P.3d 717, *quoting State v. Chaney*, 141 Ariz. 295, 302, 686 P.2d 1265, 1272 (1984).

Alcarez-Guerrero cites nothing in the record suggesting the jurors who decided his case had been actually prejudiced by pretrial publicity. Rather, he contends that "[t]he trial court abused its discretion in failing to disregard the results of voir dire in its inquiry." But the trial court did not abuse its discretion by finding pretrial publicity in this case had not been presumptively prejudicial. The overwhelming majority of the news articles Alcarez-Guerrero cited as a basis for his claim were published months before his trial and contained primarily factual information about the crimes, arrests, and pretrial proceedings. *See Davolt*, 207 Ariz. 191, ¶ 46, 84 P.3d at 471 ("We have refused to presume prejudice when the publicity was 'primarily factual

1
2
3
4
5
6

and non-inflammatory or if the publicity did not occur close in time to the trial.'"), *quoting Nordstrom*, 200 Ariz. 429, ¶ 15, 25 P.3d at 727. Although newspaper and online coverage of the trial of one of Alcarez-Guerrero's codefendants occurred close in time to Alcarez-Guerrero's trial and included reports that the codefendant had implicated Alcarez-Guerrero in the murder, the court did not abuse its discretion in determining implicitly that these articles, and the pretrial publicity as a whole, had not satisfied the "high" and "rarely met" standard required for presumed prejudice. *Id.* Thus, the court did not abuse its discretion by concluding that trial counsel had neither performed deficiently nor prejudiced the defendant by failing to move for a change of venue for the trial.

7
8

*Answer*, Ex. AA, pp. 2-4.

9

10   Alcarez-Guerrero contends that the Court of Appeals' denial of this claim was

11   objectively unreasonable.  He argues that Sierra Vista media coverage of the killing

12   was "patent and pervasive" and that this caused the jury pool to be tainted and biased.

13   *Petition*, pp. 36-36.  However, as the Court of Appeals concluded, he has not offered

14   evidence that presumed or actual prejudice resulted from the failure to seek a change

15   of venue.   Presumed prejudice exists only in cases where pretrial publicity is

16   "extreme."  *Skilling v. United States*, 130 S.Ct. 2896, 2915 (2010).  Examples of

17   these extreme cases include *Rideau v. Louisiana*, 373 U.S. 723 (1963), where local

18   television stations broadcasted the defendant's filmed confession just prior to trial,

19   and *Estes v. Texas*, 381 U.S. 532 (1965) and *Sheppard v. Maxwell*, 384 U.S. 333

20   (1966), where the courtrooms were literally overrun by the media.  The Supreme

21   Court characterized the convictions in these cases as "obtained in a trial atmosphere

22   that [was] utterly corrupted by press coverage . . . ."  *Skilling*, 130 S.Ct. at 2914

(quoting *Murphy v. Florida*, 421 U.S. 794, 798-799 (1975).  There is no evidence

1    that media coverage of Alcarez-Guerrero's trial even approached the levels needed to

2    support a presumption of prejudice.  As the Court of Appeals reasonably concluded,

3    the coverage cited by Alcarez-Guerrero was largely factual and did not contain a

4    confession or other obviously prejudicial information that a potential juror could not

5    be reasonably expected to set-aside during trial.

6        The Court of Appeals also reasonably concluded that no actual prejudice

7    resulted from holding the trial in Sierra Vista.    Relief would be warranted only

8    where it is demonstrated that the jurors had "fixed opinions" which would prevent

9    them from judging the case impartially. *Patton v. Yount*, 467 U.S. 1025, 1035 (1984).

10   The evaluation of the media's impact on the jurors is "particularly within the

11   province of the trial judge." *Skilling*, 130 S.Ct. at 2817.  Alcarez-Guerrero is unable

12   to show that the trial judge failed to recognize that jurors had opinions about the case

13   that rendered them impartial.  He contends that because some jurors were exposed to

14   pre-trial publicity shows he was prejudiced.  However, impartiality does not require

15   that jurors be completely unaware of the facts and issues involved in the case.

16   *Murphy*, 421 U.S. at 800.  Without evidence of actual prejudice, the Court cannot

17   find that the state courts' denials of this claim were unreasonable.

18       **b.    Claim 5**

19       Alcarez-Guerrero's final argument is that his trial counsel was ineffective in

20   not presenting mitigating evidence at sentencing.  Initially, Respondents contend that

21   this claim is barred under *Davis v. Grigas*, 443 F.3d 1155 (9th Cir. 2006), and

22   *Cooper-Smith v. Palmateer*, 397 F.3d 1236 (9th Cir. 2005), which are the basis for the

1   Ninth Circuit's holding that there is no clearly established precedent in the context of

2   ineffective assistance of counsel in noncapital cases.  *Davis*, 443 F.3d at 1158 (citing

3   *Cooper-Smith*, 397 F.3d at 1244).  However, in a recent decision, the Supreme Court

4   held that *Strickland* prejudice can occur at sentencing. *See Lafler v. Cooper*, 132

5   S.Ct. 1376 (2012).  Because *Lafler* was decided well after Alcarez-Guerrero was

6   sentenced, there is a question about its applicability.

7         In *Teague v. Lane*, 489 U.S. 288 (1989), the Supreme Court held that a new

8   rule of constitutional law cannot be retroactively applied in the habeas context unless

9   the new rule forbids criminal punishment of the conduct in question or if it is a

10  "watershed" rule of criminal procedure.  *Teague*, 489 U.S. at 310-12.  It is the latter

11  of these two exceptions that potentially applies here.  However, the Supreme Court

12  has stated that "[a]lthough the precise contours of this exception may be difficult to

13  discern, [the Court has] usually cited *Gideon v. Wainright*, 372 U.S. 335, 83 S.Ct.

14  792, 9 L.Ed.2d 799 (1963), holding that a defendant has the right to be represented

15  by counsel in all criminal trial for serious offenses, to illustrate the type of rule

16  coming within the exception." *Saffle v. Parks*, 494 U.S. 484, 495 (1990).  As the rule

17  here, unlike the rule announced in *Gideon*, is not within the "small core of rules

18  requiring 'observance of those procedures that . . . are implicit in the concept of

19  ordered liberty," the exception is inapplicable.  *See Graham v. Collins*, 506 U.S. 461,

20  478 (1993) (quoting *Teague*, 489 U.S. at 311).

21        Even if *Lafler* was to apply, the Arizona Court of Appeals decision is

22  nevertheless reasonable.  Evaluating this claim, the court wrote:

23

1

2

3

4

5

6

Next, Alcarez-Guerrero contends that counsel performed deficiently by "fail[ing] to present any mitigation evidence" at sentencing. Specifically, he contends counsel failed to properly investigate mitigating issues, failed to present for inclusion in the presentence report a letter that had been written by Alcarez-Guerrero's family and contained over one hundred "supporting" signatures, and failed to inform family members that the time for the sentencing hearing had been changed or otherwise facilitate their speaking at the sentencing hearing. He claims his family members' statements "could have humanized [him]" and provided the basis for a life sentence with the possibility of parole.

7

8

9

10

11

12

13

14

Initially, we note the trial judge stated at sentencing that he had considered Alcarez-Guerrero's expression of remorse and other mitigating factors that had been submitted. But, even assuming as true that counsel had neither investigated nor presented mitigating circumstances, the trial court did not abuse its discretion by finding no prejudice from counsel's inaction. As the court noted in its ruling, Alcarez-Guerrero did "not submit[ ] any indication of what mitigating evidence an investigator might have discovered" or what statements his family could have made that would have persuaded the court to impose a different sentence. The letter Alcarez-Guerrero attached to his petition did not contain any mitigating information but merely expressed disagreement with the verdict. And, to the extent Alcarez-Guerrero contends his family could have told the court the effect methamphetamine use had had on him, the court had noted at sentencing that, although it had not

15

16

17

18

19

> hear[d] any evidence or really any argument that would explain how the use of methamphetamine in this murder, kidnaping and assault would explain or excuse to any extent the defendant's actions, ... even if [it] consider[ed] the use of methamphetamine as well as remorse as mitigating circumstances, [it did] not believe that they would be sufficient to outweigh the aggravating circumstances in this case.

20

Consequently, the court did not abuse its discretion in determining Alcarez-Guerrero had failed to present a colorable claim on this issue as well.

21

*Answer*, Ex. AA, pp. 5-6.

22

Alcarez-Guerrero asserts that his counsel "gave-up" and "failed to present humanizing evidence." *Petition*, p. 47. As specific examples, he again notes that his methamphetamine use should have been emphasized and the letter from his family presented to the court. These assertions were reasonably addressed by the Arizona Court of Appeals and Alcarez-Guerrero offers nothing that would undermine the validity of that determination.

**III.   RECOMMENDATION**

Based on the foregoing, the Magistrate Judge **RECOMMENDS** that the District Court, after its independent review, **deny** Alcarez-Guerrero's Petition for Writ of Habeas Corpus (Doc. 1).

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

However, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. If any objections are filed, this action should be designated case number: **CV10-00750-TUC-JGZ**. Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be

considered a waiver of a party's right to *de novo* consideration of the issues.  *See*

*United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003)(*en banc*).

       Dated this 12th day of July, 2013.


                                   Jacqueline M. Rateau
                                United States Magistrate Judge